CHARLES A. McCORMICK, RELATOR, v. THE CITY OF NEW BRUNSWICK, RESPONDENT.

Submitted March 16, 1916—Decided June 8, 1916.

1. The writ of *mandamus* will ordinarily not be awarded when such award will create disorder or confusion, or injuriously affect the rights of third persons.
2. The questions raised in this case being such as should have been raised promptly by a writ of *certiorari* attacking a contract for a public improvement—*Held*, that *mandamus* to assess the expense of such improvement should be denied where it appeared that it would involve a determination as to the legality of the contract after the improvement was completed and the contract price paid.

---

On demurrer to return to an alternative writ of *mandamus.*

Before Justices PARKER, MINTURN and KALISCH.

For the relator, *Theodore Strong.*

For the respondent, *Freeman Woodbridge.*

The opinion of the court was delivered by

PARKER, J. The writ calls upon the respondent to proceed according to the city charter to assess the costs and expenses of opening a new street specifically described, or to show cause to the contrary. The facts deducible from the writ and the return indicate that the land for the street was acquired and the street itself was actually opened in a manner that seems plainly irregular; but, notwithstanding this, we do not think the relator is entitled to this extraordinary remedy.

The relevant facts are, that in June, 1913, council passed an ordinance to open the street in question, and for that purpose to acquire the necessary land, and directing the committee on streets to negotiate with the owner for the same; and that the cost and expense of the improvement be assessed, collected and appropriated according to the provisions of the city charter. The ordinance was vetoed by the mayor, but passed over his veto, and the committee on streets proceeded to negotiate with the owner of the land, named Jelin, who owned the entire block through which the street was to run. The result of this negotiation was a written agreement between Jelin and the city, whereby Jelin undertook to convey the necessary land to the city by warranty deed free of encumbrance, and also to grade, sewer, pave and curb the roadway of the new street and lay sidewalks therein, all in a prescribed manner and subject to the approval of city officials; and in consideration thereof the city agreed to exempt his other land in the block from assessment for this improvement, and also to pay him the sum of $4,500 in cash. This agreement was carried out, apparently without any attack by *certiorari* by the present relator or anyone else. Jelin conveyed the land and did the work; and the city paid the money, and included the item in the annual tax budget for 1914. It was paid some time in that year, presumably when the work was

done, or substantially done, and the land conveyed. At the time of the return the street had been accepted and was in use as a public street.

The rule to show cause in this cause was argued or submitted at the June term, 1914. At some time prior to March of that year relator appears to have attempted to restrain the proceedings between the city and Jelin by an equity suit for injunction, but was unsuccessful, the Chancellor pointing out that the irregularity of procedure, if any, should be corrected in this court. *McCormick* v. *New Brunswick,* 83 *N. J. Eq.* 1.

In the situation that existed at the time of application for an injunction, the appropriate remedy of the relator, or of any other taxpayer, was by way of *certiorari.* The ordinance was not in question; but, after the ordinance, the council departed from the charter procedure and undertook, not simply to acquire the land by negotiation and deed, for that would have been lawful under the charter, but to combine with the purchase a scheme of contracting for the improvement and of paying for the whole partly by cash and partly by exemption from assessment, that flew in the very face of the charter, and, as it seems to us, rendered voidable the whole transaction. All that was needed was the timely interposition of some prosecutor having a proper *status,* with an application for a *certiorari,* and the contract and resolutions predicated thereon would in due course have been set aside. No such application appears to have been made; and because of the mistaken resort to an equity suit, and subsequent delay until the whole scheme had been carried out, the position of the city became impregnable to attack by *certiorari.*

We are clear that a peremptory writ of *mandamus* should not go, and for the reason that it would only introduce confusion into the situation. The city has paid $4,500 and has a completely improved new street. The injury to relator as a taxpayer must be slight, if not infinitesimal. To issue the writ would involve a decision as if on *certiorari,* setting aside the contract between the city and Jelin as to the exemption feature, an examination and ascertainment of the various items involved in the scheme that was carried out and a re-

adjustment of them in the form of assessments, award for land taken, and payment for work done. Not to mention the impracticability of such a proceeding, Mr. Jelin would be at least entitled to a hearing before it could be set on foot, and it may well be that he could satisfy the court that it necessarily involved the remaking of a contract for him that he would never have entered into voluntarily, and the taking of his property without compensation.

*Mandamus* may be denied where it will create disorder and confusion (26 *Cyc.* 146; *People* v. *Olsen,* 215 *Ill.* 620; 74 *N. E. Rep.* 785), or where the rights of third persons will be injuriously affected. 26 *Cyc.* 149; *In re Hart,* 159 *N. Y.* 278; 54 *N. E. Rep.* 44. We are quite unable to see how the questions involved could be determined in any action except one of *certiorari,* begun before the scheme had been pushed to completion, and in which Jelin as a party could be heard.

Upon the facts exhibited by this record there must be a judgment for the respondent.